FIRST NATIONAL BANK OF NEPHI v.
CHRISTENSEN, County Treasurer, et al.

No. 2125.   Decided. September 9, 1911.   Rehearing Denied November
11, 1911 (118 Pac. 778).

1.  TAXATION—NATIONAL BANKS—"MONEYED CAPITAL."  The words
"other moneyed capital," as used in Rev. St. U. S., section 5219
(U. S. Comp. St. 1901, p. 3502), providing that the shares in
national banks shall not be assessed at a greater rate than other
moneyed capital in the hands of individual citizens, does not
mean all capital, the value of which is measured in terms of
money, nor all forms of investment in which the interest of the
owner is expressed in money, nor shares of stock represented
by certificates showing that the owner is entitled to an interest
expressed in money value in the entire property of the corpora-
tion, nor real or personal property, such as ordinary chattels
or commodities, nor investments in manufacturing and industrial
enterprises; but does include shares of stock or other interest
owned by individuals in enterprises in which the capital em-
ployed in carrying on the business is money, and the object of
the business is the making of a profit by the use of money†
(Page 575.)

2.  TAXATION—NATIONAL BANK SHARES—EXCESSIVE ASSIGNMENTS—
EVIDENCE.  Evidence *held* insufficient to warrant a finding that
the shares of complainant national bank were assessed for tax-
ation at a greater rate than other moneyed capital in the hands
of individual citizens in violation of Rev. St. U. S., section
5219 (U. S. Comp. St. 1901, p. 3502).   (Page 575.)

3.  TAXATION—INEQUALITY—ASSESSMENT.  Inequality or lack of uni-
formity in the assessment of property for taxation may result
not only by applying different rates of assessment, but from mis-
conduct of taxing officers by which property of one person or class
of persons or particular class of property is assessed at a valua-
tion greater in proportion to its real or cash value than is placed
on the mass of other taxable property.   (Page 577.)

4.  TAXATION—ASSESSMENT—EQUALITY.  Though Comp. Laws 1907,
section 2506, requires that all taxable property shall be assessed
at its full cash value, yet, where taxing officers assess certain
kinds of personal property in a county at from fifty to seventy
per cent. of its actual or cash value, the assessment of other
kinds of personal property at its full, actual, or cash value is
invalid for inequality and non-uniformity.   (Page 578.)

5.  TAXATION—UNEQUAL   ASSESSMENT—REMEDY.   Where   certain
kinds of personal property are intentionally assessed at a higher

† Commercial Nat. Bank **v.** Chambers, 21 Utah 347, 61 Pac. 560,
50 L. R. A. 346.

percentage of valuation than is placed on the general mass of taxable property in the county, the owners of the property assessed at the higher percentage or valuation may invoke the aid of the courts to compel the taxing officers to reduce such excessive assessment. (Page 578.)

6. TAXATION—ASSESSMENT—INEQUALITY—BURDEN OF PROOF. The burden to show inequality of assessment of property for taxation is on the taxpayer. (Page 578.)

7. TAXATION—ASSESSMENT—NATIONAL BANK SHARES—INEQUALITY. Where, in a suit to compel a reduction of the assessment of the shares of stock of a national bank for inequality, the only substantial evidence from which the actual or cash value of the stock could be inferred was the corporation's net assets, and on that basis the assessment was not materially greater in value than that placed on the general mass of the taxable property in the county, inequality and non-uniformity of an assessment was not shown. (Page 578.)

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood*, Judge.

Action by the First National Bank of Nephi against B. Christensen, County Treasurer of Juab County, and others.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*W. R. Hutchinson* for appellant.

*T. L. Foote* and *Thurman, Wedgwood & Irvine* for respondents.

### APPELLANT'S POINTS.

Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality

of burden cannot exist without uniformity in the mode of assessment, as well as in the rate of taxation, and the uniformity must be co-extensive with the territory to which it applies. (*Pelton v. National Bank,* 101 U. S. Rep. 143; *Cummings v. National Bank,* 101 U. S. Rep. 153; *Boyer v. Boyer,* 113 U. S. 690; *Hills v. Exchange Bank,* 195 U. S. 319.)

If the state law justly administered would produce uniformity, but the officers knowingly and purposely apply an additional rule of valuation of the shares of national banks in order to impose disproportionate taxes upon them the courts will give relief. (1 Cooley on Taxation [3d Ed.], page 712; and see note one, page 714 and cases cited; *First National Bank v. Hungate,* 62 Fed. Rep. 548; *First National Bank v. Treasurer Lucas Co.,* 25 Fed. Rep. 749; *Puget Sound National Bank v. King County,* 57 Fed. Rep. 433.)

All property, not exempt, shall be taxed in proportion to its value, and that the legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state according to its value in money. (Constitution of Utah, art. 13, secs. 2 and 3.)

National Banks like any other taxpayers, against whom discrimination is made, are entitled to the protection of this constitutional provision. (*First Nat. Bank v. Lindsay,* 45 Fed. Rep. 619.)

When the taxing officers of a county by tacit understanding assess all personal property at a lower per cent. of its actual value than they assess national banks, the collection of the excess will be restrained. (*First National Bank v. Treasurer Lucas County,* 25 Fed. Rep. 749.)

RESPONDENT'S POINTS.

What the "rate" of taxation in the state in counties other than Juab was, is immaterial. (*People v. Moore,* 1 Idaho, 504.)

The testimony introduced in regard to the full cash value and the assessed value of real estate and personal property was immaterial and irrelevant. (*Albany City v. Maher,* 6

Fed. 417; *Silver Bow County Commissioners v. Davis,* 12 Pac. 688; *National Bank v. City of Boston,* 125 U. S. 60; *Talbott v. Silver Bow County Commissioners,* 139 U. S. 438; *Mercantile Natl. Bank v. City of New York,* 121 U. S. 138.)

The evidence in regard to the full cash value and the bank assessed value of the stock of the Nephi National Bank was immaterial and irrelevant for the reasons: (a) It was, itself a national bank, and not "other moneyed capital." (b) The assessed valuation of its stock was a greater per cent of its full cash value than was the assessed value of plaintiff's stock. (c) The law does not apply to imperfections and inaccuracies in assessments or to mere over-valuation. (*Stanley v. Albany County Supervisors,* 15 Fed. 483; *Williams v. Weavern,* 75 N. Y. 30; *Williams v. Albany County Supervisors,* 122 U. S. 154.)

The "other moneyed capital" referred to in the statute means "money employed in a business whose object is to make profit by investing in securities by way of loan, discount or otherwise, which, from time to time, are reduced again to money and re-invested. (*Mercantile Natl. Bank v. Shields,* 59 Fed. 952; *Palmer v. McMahin,* 133 U. S. 660; *First Natl. Bank v. Chambers,* 21 Utah, 347.)

The only substantial limitation upon the power of the states to impose taxes upon the shares of national banks, is that they shall not subject such shares to taxation to an amount greater than they assess upon their own banks or upon moneyed capital in the hands of their own citizens. (*First Natl. Bank v. Douglas County,* Fed. Cas. No. 4799 (1 Dill. 330); *Lionberger v. Rouse,* 9 Wall. 468; *Mercantile Natl. Bank v. City of New York,* 28 Fed. 776.)

In the taxation of the shares of a national bank, it must appear that the assessors acted under some agreement or rule which necessarily tended to tax such shares at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state in order to render their assessment void. (*First Natl. Bank of Chicago v. Farrell,* 7 Fed. 518; *Washington Natl. Bank v. King County,* 38 Pac. 219.)

STRAUP, J.

Plaintiff, a banking association of Nephi, Juab County, Utah, organized under the national banking laws of the United States, brought this action to enjoin the collection of a tax alleged to be wrongfully assessed against its shares of stock. The ground of objection to the tax is that in the valuation of the shares for the purpose of taxation a much larger valuation was placed on them in proportion to their real value than was placed on other moneyed capital and on real and personal property in the county and state. The only finding made by the court, and that in the nature of a conclusion, is "that the assessed valuation of the shares of stock of the plaintiff corporation as put down in the assessment books of Juab County by the assessor of said Juab County for the year 1907 is not a greater valuation than is assessed upon all other moneyed capital in the hands of individual citizens of the State of Utah, and that it is not a greater valuation than is placed upon the shares of book stock in other banking institutions in the City of Nephi or County of Juab, or the State of Utah, and that it is not a greater valuation than is placed upon other moneyed capital in the hands of individual citizens of Nephi City, or the County of Juab, or the State of Utah." Upon these findings a judgment was entered in favor of the defendants, from which the plaintiff has prosecuted this appeal.

It contends that the findings are not supported by and are against the evidence; and that the assessed valuation placed on its shares of stock was (1) in violation of section 5219, R. S. U. S. (U. S. Comp. St. 1901, p. 3502), and of section 2508 of the Compiled Laws of Utah, 1907, providing that shares of stock of national banking associations shall not be taxed by authority of the state in which the association is located at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state; and (2) in violation of the constitutional provisions of the state, and of the statute, providing for a uniform and equal rate of assessment and taxation.

The findings made by the court are of no help, except to see the conclusion reached by the court. At what valuation plaintiff's shares of stock were assessed, or what were their real or cash value, or at what valuation other property of the county was assessed, whether at its real or cash value, or at what proportion of its real or cash value, the court did not take the trouble to find, but imposed the labor on us to ascertain such facts.

The evidence is somewhat conflicting. A deputy assessor testified: That some lands worth thirty dollars per acre were assessed at $6.50; $100 or more an acre at fifty dollars to sixty dollars; from twenty dollars to forty dollars an acre at ten dollars; that real estate generally was assessed at from fifty to seventy-five per cent. of its value, and in most cases the assessment would not exceed fifty per cent. of its market value; horses worth from seventy-five dollars to $150 apiece were assessed at forty dollars to fifty dollars; cattle worth from twenty-two dollars to thirty-five dollars a head were assessed at fourteen dollars to twenty dollars; shares of stock of an irrigation company worth from sixty dollars to sixty-five dollars were assessed at twenty-five dollars; and that merchandise and other personal property at about seventy-five per cent. of its market value. A deputy state auditor testified that shares of stock of banking institutions of the state were, as a rule, assessed below their par value, in the majority of cases from sixty-five to seventy or seventy-five per cent. of their par value, and that he had not known of an instance where shares of stock of a bank were assessed at the actual cash value until his attention was called to the assessment of the shares of stock of the banking institution of the plaintiff. Testimony of other witnesses was also given that shares of stock of the Nephi National Bank, also organized under the banking laws of the United States, with a capital stock of $50,000 of 500 shares at a par value of $100 each, were assessed at thirty-five dollars a share. This bank was organized in November, 1906, when one-half of its capital stock, $25,-000, was paid in, and the other half, $25,000 in payments in February, March, April, and May, 1907. The stock, how-

ever, was all subscribed for in November, 1906, when the charter was issued, but only $25,000 of the capital stock had been paid in when the stock was assessed in January, 1907. The banking institution of the plaintiff, the First National Bank of Nephi, was also incorporated for 500 shares at a par value of $100 each. The stock, when the assessment complained of was made, in January, 1907, was then, and prior thereto had been, fully paid up. Its shares of stock were assessed at $200 a share, or at $100,000. The assessor testified that he arrived at that valuation from a sworn statement of the bank made on the 26th day of January, 1907, and published in a newspaper. That statement gave the capital stock of the bank at $50,000, a surplus fund of $50,000, undivided profits less expenses and taxes paid at $32,597, and a provident reserve fund at $14,465—a total net asset of about $147,000. Taking that valuation as the actual or cash value of the shares of stock, the assessment placed on them was about seventy per cent. of their actual or cash value. The total amount of tax levied on the shares of stock amounted to $3232.45, of which the bank paid $2047.89, on a valuation of about $130 a share, and refused to pay the balance of $1184.56, which sum it sought to enjoin the treasurer from collecting. The assessor testified that: "I took the capital stock of the corporation (the plaintiff) and the undivided profits and the reserve for taxes, and I deducted the real estate and such things as that; deducted $3000 for real estate, and thirty per cent. That is the allowance that we used to make on the other property throughout the county. The other bank here (the Nephi National Bank) was listed 500 shares at thirty-five dollars per share, making $17,500. The cashier said that there was only $25,000 of the $50,000 paid up. In assessing the stock of a company, I aim to assess about seventy per cent. of its value, and on merchandise about the same rate, and the same on land and real estate. I didn't assess the stock of the Nephi National Bank in 1907 at its market value, possibly sixty per cent. of its market value." The chairman of the board of county commissioners testified that lands in which he was interested and worth from $100

to $200 an acre were assessed at twenty dollars an acre; merchandise from $10,000 to $15,000 at $8000 or $9000; shares of stock of a mercantile incorporated company of a paid-up capital stock of $35,000 at $12,000 or $15,000.

Our statute (section 2506, Comp. Laws 1907) provides that "all taxable property must be assessed at its full cash value." The plaintiff does not contend that its shares of stock were assessed at a sum in excess of its "full cash value." It does contend that its shares of stock were assessed at a greater sum in proportion to their actual or cash value than was placed upon other moneyed capital in the state and county, and on other personal and real property in the county, thus rendering the assessment in violation of the state and of the United States statutes heretofore referred to.

We think it is not shown that plaintiff's shares of stock were assessed at a greater rate than "other moneyed capital in the hands of individual citizens." The meaning of the term "other moneyed capital," as used in the statute, has been before the courts a number of times, who held that "moneyed capital does not mean all capital the value of which is measured in terms of money," nor "all forms of investments in which the interest of the owner is expressed in money," nor "shares of stock in railroad, mining companies, manufacturing companies, or other corporations represented by certificates showing that the owner is entitled to an interest expressed in money value in the entire capital and property of the corporation," nor personal property, such as ordinary chattels or commodities, nor "investments in the various manufacturing and industrial enterprises;" but does "include shares of stock or other interest owned by individuals in enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by the use of money," and that the "purpose of Congress in fixing limits to state taxation on investments in the shares of national banks was to render it impossible for the state in levying such a tax to create and foster an unequal and unfriendly competition by favoring institu-

tions or individuals carrying on a similar business and operations and investments of a like character." (*Mercantile Bank v. New York,* 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895; *Palmer v. McMahon,* 133 U. S. 660, 10 Sup. Ct. 324, 33 L. Ed. 772; *Talbott v. Silver Bow County,* 139 U. S. 438, 11 Sup. Ct. 594, 35 L. Ed. 210; *First Nat. Bank v. Chehalis County,* 6 Wash. 64, 32 Pac. 1051; *Com. Nat Bank v. Chambers,* 21 Utah, 347, 61 Pac. 560, 50 L. R. A. 346.)

This being the sense in which the term "moneyed capital" is used in the tax laws, it is clear that real estate or personal property, such as horses, cattle, merchandise, shares of stock in irrigation companies, etc., is not included within it. Of course it does include shares of stock in banking institutions or associations. While it is shown that shares of stock of banking institutions of the state were assessed from sixty-five to seventy per cent. of their par value and those of the Nephi National Bank, a direct competitor of the plaintiff, at thirty-five per cent. of their par value, and those of the plaintiff 200 per cent. of their par value, yet it is not made to appear that the shares of stock so assessed at thirty-five to sixty-five or seventy per cent. of their par value were assessed below their "full cash value," or actual value, or at a sum less in proportion to their full cash or actual value than was placed on plaintiff's shares of stock. There is a total want of evidence to show the actual or market, or cash value of the shares of stock of such banking institutions whose shares of stock were so assessed below par. Proof that plaintiff's shares of stock were assessed at 200 per cent. of their par value, and shares of stocks in banks generally within the state at sixty-five to seventy per cent. of their par value, does not, in itself, show that the plaintiff's shares of stock were assessed at a greater rate or amount in proportion to their value than the shares of stock of other banks. To so hold is to assume that the actual or cash value of the shares of stock of the different banks was of the same value. So, in the absence of proof of the actual or cash value of such shares of stock, we are unable to determine whether the plaintiff's shares of stock were assessed at a sum greater in proportion to their actual or cash value

than was placed on the shares of stock of other banks. There is even no satisfactory evidence to show the actual or cash value of plaintiff's shares of stock. There is evidence to show that in June, 1906, when plaintiff's bank was reincorporated, its twenty years' charter having then expired, 133 shares of its stock were purchased by it at $325 a share. But from the evidence manifestly such purchase was not a test of the market or cash value of the shares so purchased. When the charter of the bank had expired, in June, 1906, "any stockholder," as testified to by the president of the bank, "could demand his money at a valuation by disinterested persons or liquidate the bank, making it go out of existence and lose its name and standing. Two of the appraisers voted to assess the value of the stock at $330 a share and the other at $200 a share. We refused to pay the excessive amount levied by the majority of the appraisers and referred the matter to the Comptroller of the Currency. He notified us that we would either have to pay as the majority assessed it or liquidate the bank and change the name. We finally agreed rather than change the name of the bank," to purchase the 133 shares of those who refused to become stockholders of the reincorporated bank at the price demanded by them, and as fixed by the majority of the appraisers. The only other evidence tending to show the actual or cash value of the shares of stock is that of its net assets amounting to about $147,000.

The question of inequality and want of uniformity in the assessment and taxation is more serious.

Inequality and lack of uniformity may result not only by applying different rates of assessment, but also from misconduct of taxing officers by which property of one person, or a class of persons, or a particular class of property, is intentionally assessed at a valuation greater in proportion to its real or cash value than is placed on the general mass of other taxable property.

That is, though the Constitution and the statute require the taxing officers to assess all taxable property at "its full cash value," yet, should taxing officers of a county assess

real estate, live stock, merchandise and chattels at fifty to seventy per cent. of their actual or cash value, and moneys or shares of stock in manufacturing or industrial enterprises, or investments, at their actual or cash value, the assessment would not be equal or uniform.

In such case, those whose property was intentionally assessed at a higher percentage or valuation than was placed on the general mass of taxable property in the county may invoke the aid of courts to compel the taxing officers to reduce the excessive assessment so made, to the same proportion of value as was placed upon the general mass of other taxable property in the county. A denial of such right results in inequality and a want of uniformity in the assessment and taxation. (*Lively v. Missouri, K. & T. Ry. Co. of Texas,* 102 Tex. 545, 120 S. W. 852; *Raymond v. Chicago Traction Co.,* 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78.; *Taylor v. Louisville & N. R. Co.,* 88 Fed. 364, 31 C. C. A. 537, 37 Cyc. 737.)

If, therefore, plaintiff's shares of stock were assessed at a value greater in proportion to that placed upon the general mass of taxable property in the county, it is entitled to have that value reduced to the proportion placed on such mass of taxable property. But on the evidence adduced we cannot say such was the case.

The burden to show the inequality was on the plaintiff.

In the first place, the matter is left uncertain because of the character of the evidence in respect of the actual or cash value of plaintiff's shares of stock and a total want of evidence to show the actual or cash, or market value of shares of stock of other banks whose shares of stock were assessed below the par value. The only substantial evidence from which the actual or cash value of plaintiff's shares of stock may be inferred is that of its net assets. If we assume that to be the actual or cash value of its shares of stock, then the assessment made upon them was about seventy per cent. of their actual or cash value, a proportion not ma-

terially greater in value than was placed on the general mass
of taxable property in the county. True, specific instances
were testified to where some real estate was assessed at fifty
per cent. of its actual or cash value, horses and cattle from
fifty to seventy per cent., some merchandise at about the same
per cent., shares of stock of the Nephi National Bank at
thirty-five per cent. of its par value, and shares of stock of
banks generally in the state from sixty-five to seventy-five per
cent. of their par value. Of course, specific instances here
and there where a lower valuation in proportion to the actual
or cash value was placed on taxable property than was placed
on plaintiff's property do not, within themselves, furnish
sufficient ground for complaint. To constitute such ground it
must be made to appear that a greater valuation in propor-
tion to the actual or cash value was placed on plaintiff's prop-
erty than was placed on the general mass of taxable property
in the county. On this point the assessor testified that real
estate, shares of stock, merchandise, and other personal prop-
erty were assessed at about seventy per cent. of their actual or
cash value, the same proportion of value placed on plaintiff's
property. While this testimony in some particulars is dis-
puted by the testimony of other witnesses, yet we are of the
opinion that the conclusion reached by the trial court is not
so clearly against the weight of the evidence as to justify our
interference on that ground.

The judgment of the court below is therefore affirmed, with
costs.

FRICK, C. J., and McCARTY, J., concur.