CONTINENTAL NAT. BANK OF SALT LAKE CITY v. NAYLOR, County Treasurer.

No. 3199.   Decided February 19, 1919.   (179 Pac., 67.)

1. TAXATION—UNIFORMITY.  Under Const. art. 13, sections 2, 3, and Comp. Laws 1907, sections 2507, 2508, 2509, 2511, 2505, subd. 5, taxation should be uniform upon all property within the jurisdiction of the authority levying the tax.  (Page 57.)

2. TAXATION—INJUNCTION—ADOPTION OF WRONG PRINCIPLES OF TAXATION.  The intentional and willful adoption of wrong principles, standards, or methods in assessing property for taxes, resulting in inequality, nonuniformity, and discrimination to the injury of the taxpayer, entitles him to injunctive relief unless he otherwise has a plain, speedy, and adequate remedy.  (Page 58.)

3. EVIDENCE—HEARSAY—REPORT OF COMMISSIONERS.  In action to enjoin collection of a tax on bank stock, a report prepared by "Commissioners of Revenue and Taxation," appointed in pursuance of an act of Legislature, which report purported to contain a summary of information collected by the board as to the values at which property had been assessed in various counties in previous years, was properly excluded as hearsay; the act not providing that the report should be accepted as evidence, and the commissioners not being called as witnesses to verify the report.  (Page 59.)

4. TAXATION—BANK STOCK—DEDUCTIONS.  Under Comp. Laws 1907, section 2509, as to deductions, in assessing bank stock, on account of real estate, there should be deducted from the value

of the stock such a sum as is in the same proportion to the value as the assessed value of the real estate bears to the combined amount of the capital stock, surplus, reserve, and undivided profits of the bank. (Page 60.)

5. TAXATION—BANK STOCK—DEDUCTIONS. Under Comp. Laws 1907, sections 2507, 2508, 2509, 2511, 2505, subd. 5, deduction of percentage from value of bank stock to equalize assessment thereof with assessment of other property is to be made after deduction for assessed value of real estate. (Page 61.)

6. TAXATION—BANK STOCK—BASIS OF VALUATION. Under Comp. Laws 1907, section 2505, subd. 5, the market value, and not the "asset value," should be taken as the basis for assessment of bank shares.[1]  (Page 63.)

7. TAXATION—INJUNCTION—BURDEN OF PROVING DISCRIMINATION. In action by bank to enjoin collection of tax on its shares because of discriminatory assessment, it has the burden of establishing its complaint by a preponderance of the evidence. (Page 69.)

8. TAXATION—INJUNCTION—DISCRIMINATION—EVIDENCE. In action by bank to enjoin collection of tax on its shares, evidence held not to show intention or design by assessor or board of equalization to discriminate against plaintiff and other banks, or their stockholders, by the adoption of wrong principles, standards, or methods, or in any other respect. (Page 69.)

9. TAXATION—DISCRIMINATIONS—REMEDIES. Discriminations in assessment resulting from mistake, inadvertence, and miscalculations, or error of judgment, must be remedied in some other form of proceeding than an action to restrain collection of the tax based on such assessment. (Page 69.)

10. TAXATION—DETERMINATION OF BOARD OF EQUALIZATION. Under Comp. Laws 1907, section 2683, action of board of equalization in determining the assessed valuation of bank stock, after hearing, held final, and not reviewable in action by the bank to restrain collection of the tax based on such assessment.[2]  (Page 70.)

11. TAXATION—ENJOINING COLLECTION—GROUNDS. While Comp. Laws 1907, section 2683, recognizes the right to injunction when the tax or any part thereof sought to be enjoined is illegal, or is not authorized by law, the remedy should not be invoked except in clear cases, based upon unquestioned facts, coming within the clear terms, letter, and spirit of the statute.[3]  (Page 70.)

---

[1] *Bank* v. *Christensen*, 39 Utah, 568, 118 Pac. 778.

[2] *Mercur Gold Mining & M. Co.* v. *Spry*, 16 Utah, 222, 52 Pac. 382; *Bank* v. *Christensen*, 39 Utah, 568, 118 Pac. 778; *Home Fire Insurance Co.* v. *Lynch*, 19 Utah, 189, 56 Pac. 681.

[3] *Mercur Gold Mining & M. Co.* v. *Spry*, 16 Utah, 222, 52 Pac. 382.

Appeal from the District Court of Salt Lake County, Third District; *Hon. P. C. Evans,* Judge.

Action by Continental National Bank of Salt Lake City against R. C. Naylor, county treasurer of Salt Lake County, Utah.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Howat, Marshall, Macmillan & Nebeker,* of Salt Lake City, for appellant.

*Richard Hartley,* Co. Atty., and *H. L. Mulliner,* of Salt Lake City, for respondent.

THURMAN, J.

This is an action to enjoin the collection of a tax.

Plaintiff is a national bank doing business in Salt Lake City. Defendant is the county treasurer of Salt Lake county. The complaint, in additions to these facts, alleges the capital stock of plaintiff on January 1, 1915, was the sum of $250,000, divided into 2,500 shares of the par value of $100 each; that said shares were outstanding in the hands of plaintiff's stockholders; that the surplus on said date amounted to $50,000; that the total of capital and surplus was $300,000, and each share of said stock on said date was of the value of $120; that the proper officers of Salt Lake county, in making assessments for that year on all property in said county except that of the shares of stockholders in plaintiff's and other banks, systematically, designedly, and intentionally assessed and valued the same at not to exceed 33⅓ per cent. of the true money value thereof; that such assessment and valuation constitute the basis upon which property owners other than the owners of bank shares were assessed in said county; that in assessing and valuing the shares in plaintiff's bank said offi-

cers wrongfully, unlawfully, systematically, and intentionally assessed and valued said shares at 91.32 per cent. of the true value thereof in money, and the taxes levied on said shares were based on said disproportionate, excessive, unequal, and nonuniform valuation and assessments; that in assessing and valuing said bank shares said officers arbitrarily, systematically, and wrongfully included as part of the value a large sum for and on account of good will of the business of plaintiff, but intentionally and systematically failed and refused to assess, value, or consider in any manner whatever, or tax the good will of the business of any person, firm, or corporation in said county except the supposed good will of the plaintiff's business and that of other banking institutions; that, if said bank shares had been assessed and valued the same as other property in said county, the taxes on the shares of plaintiff's stockholders would not have exceeded the sum of $2,794.91 which sum plaintiff paid to the defendant, and stands ready to do whatever in equity ought to be done in the premises, but plaintiff alleges defendant wrongfully and unlawfully demands payment by plaintiff of the further sum of $4,517.19; that unless such further sum is paid defendant threatens to sell the real estate of plaintiff upon which taxes for said year have been paid, and the shares of plaintiff's stockholders, and if not restrained he will execute said threat, and thereby cloud the title of said property, and cause plaintiff and its stockholders irreparable injury for which there is no plain, speedy, or adequate remedy at law; that said shares of stock were originally assessed by the assessor of said county for said year at 102.98 per cent. of the true value thereof in money; that within the time allowed by law plaintiff filed an application with the board of equalization of said county, duly verified, for a reduction of the assessed valuation of said shares so that the same would be assessed equally and uniformly with the assessment on other classes of property in said county, and afterwards at a duly convened session of said board appeared before it and showed facts upon which it claimed that such reduction should be made; that said board wrongfully arbitrarily, and capriciously refused to reduce said valuation, so that the same would

be equal and uniform with the valuation of other classes of property in said county, but on the contrary, only reduced the same to 91.32 per cent. of the true value of the same in money, thereby causing the tax on said shares, to the extent of $4,517.19, to be unequal, nonuniform, excessive, and discriminative, as previously alleged.

Plaintiff further alleges that said assessor and board of equalization in assessing and valuing property in said county for said year for taxation purposes knowingly, systematically, and intentionally discriminated generally against the holders of shares in banking institutions as a class for the purpose of compelling them and said banks to pay an unequal, unjust, and excessive portion of the public revenues.

Plaintiff prays that the excess valuation complained of be adjudged invalid; that defendant be perpetually enjoined from selling, or attempting to sell, said property, and temporarily restrained during the pendency of the action from further proceeding to enforce collection. The restraining order was issued.

Plaintiff afterwards by amendment to its complaint alleged, in substance, that the action of the assessor and board of equalization complained of, and the statute under which the assessment was made, were and are in violation of the Constitution and statutes of Utah, and a denial to plaintiff and its shareholders of the equal protection of the laws, a right secured by the Fourteenth Amendment to the Constitution of the United States, which right is claimed under said amendment.

Defendant by his answer admits that plaintiff is a national bank in Salt Lake City; that defendant is treasurer of Salt Lake county; that plaintiff paid defendant the sum of $2,794.91 as alleged; that plaintiff filed its verified application with the board of equalization for the reduction of the valuation of said shares; that plaintiff appeared before said board upon the hearing of said application, and said board did, upon said hearing, reduce the valuation of said shares from $210,950 to $175,814. Defendant, for want of information, denies the allegations of the complaint as to the capital

stock of the plaintiff and the value of the shares thereof, except that he admits that on the 1st day of January, 1915, plaintiff did employ in its business fully paid up capital stock in the sum of $250,000; that 2,500 shares of said stock were outstanding in the hands of its stockholders; and that plaintiff had a surplus of $50,000 or more.

Further answering, defendant affirmatively alleges: That the shares of stock of plaintiff bank, at the time and in the manner provided by law in 1915, were duly assessed to and against the stockholders of said bank as provided in title 80, chapter 3, Comp. Laws Utah 1907; that in determining the value of said shares the assessor of said county, in the exercise of his discretion and judgment as assessor, duly determined that the value of said shares, after making all lawful and proper deductions, was $210,950; that thereafter, within the time provided by law, the plaintiff, on its own behalf and that of its stockholders, applied to the board of equalization of said county for a reduction in the valuation so fixed by the assessor; that said application was duly considered by said board, who, being advised, duly and regularly exercised its discretion and judgment as to the valuation of said shares, and so acting reduced the valuation, $210,950, fixed by said assessor, to the sum of $175,814; that the judgment of said assessor and said board of equalization so exercised, and the valuation so finally determined, is final and conclusive as to the valuation of said shares of stock for the purposes of assessment for said year. Defendant prays judgment that plaintiff's prayer for relief be denied; that the restraining order be dissolved, and the action dismissed, with costs.

The trial court found the issues in favor of the defendant, entered judgment dissolving the temporary restraining order, and denied the application for a perpetual injunction. Plaintiff appeals and assigns many errors.

The gist of appellant's whole contention, when reduced to a single proposition, is that in the year 1915 the assessing officers of Salt Lake county in determining the value of bank shares for taxation purposes, systematically, wrongfully, and intentionally discriminated against said class of property as

compared with other classes of property in the county. The **various** questions presented and discussed in appellant's brief represent different phases of this contention, and, in the opinion of the court, all of them are within the issues presented by the pleadings. We make this statement at this stage of our remarks in answer to suggestions made by respondent to the effect that certain points raised and relied on by appellant are not within the issues.

Appellant cites and quotes at length numerous sections of the Constitution, both state and federal, and also various provisions of the state law relating to taxation, upon which it relies in support of its contention. For the convenience of those whom it may concern, the sections of the state Constitution and laws cited by appellant are made part of this opinion and quoted at length.

Sections 2 and 3, art. 13, Utah Constitution:

"Sec. 2. All property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The word property, as used in this article, is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership; but this shall not be so construed as to authorize the taxation of the stocks of any company or corporation, when the property of such company or corporation represented by such stocks, has been taxed. The Legislature shall provide by law for an annual tax sufficient, with other sources of revenue, to defray the estimated ordinary expenses of the state for each fiscal year. For the purpose of paying the state debt, if any there be, the Legislature shall provide for levying a tax annually, sufficient to pay the annual interest and principal of such debt, within twenty years from the final passage of the law creating the debt."

"Sec. 3. The Legislature shall provide by law a uniform and equal rate of assessment and taxation of all property in the state, according to its value in money, and shall prescribe by general law such regulations as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property: Provided, that a deduction of debits from credits may be authorized: Provided further, that the property of the United States, of the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for either religious worship or charitable purposes, and places of

burial not held or used for private or corporate benefit, shall be exempt from taxation. Ditches, canals, reservoirs, pipes and flumes owned and used by individuals or corporations for irrigating lands owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed as long as they shall be owned and used exclusively for such purpose: Provided further, that mortgages upon both real and personal property shall be exempt from taxation: Provided further, that taxes of the indigent poor may be remitted or abated at such time and in such manner as may be provided by law. (As amended Nov. 6, 1906.)"

Sections 2507, 2508, 2509, 2511 and 2505, subd. 5, Comp. Laws Utah 1907: .

"Sec. 2507. The stockholders in every bank or banking association, organized under the authority of this state or of the United States, must be assessed and taxed on the value of their shares of stock therein, in the county, town, city, or district where such bank or banking association is located, and not elsewhere, whether such stockholders reside in such place or not. To aid the assessor in determining the value of such shares of stock, the cashier or other accounting officer of every such bank must furnish a verified statement to the assessor showing the amount and number of shares of the capital stock of each bank, the amount of its surplus or reserve fund or undivided profits, the amount of investments in real estate, which real estate must be assessed to said bank and taxed as other real estate, and the names and places of residence of its stockholders, together with the number of shares held by each."

"Sec. 2508. In the assessment of the shares of stock mentioned in the next preceding section, each stockholder must be allowed all the deductions and exemptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this state, and the assessment and taxation must not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state."

"Sec. 2509. In making such assessment, there must also be deducted from the value of such shares such as is in the same proportion to such value as the assessed value of the real estate of such bank or banking association in which such shares are held bears to the whole amount of the capital stock, surplus, reserve,, and undivided profits of such bank or banking association."

"Sec. 2511. All taxes levied under the provisions of this title upon the shares of stock of banking corporations or associations. must be paid by the corporation or association, and the amount of any such tax paid may be retained and deducted by the bank out of the dividends upon the stock or out of any other funds of the stockholder then or thereafter in its hands, and a paramount lien is given to the bank against the stock upon which the tax is so

paid to enforce the repayment or refunding of said tax; and no transfer or incumbrance of the said stock shall be made or permitted to be made by the bank, so long as the tax remains due and unpaid."

"Sec 2505, subd. 5. The terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor."

First in order following the line of appellant's argument it is contended that the mass of property in Salt Lake county other than shares in banks in 1915 was valued by the assessing officers for taxation purposes at not to exceed from one-third to two-fifths of its actual value, while bank shares were assessed at a sum exceeding 90 per cent.; that, if said shares had been assessed equally and uniformly with other property in said county, the taxes upon shares in appellant's bank would not have exceeded the sum of $2,794.91, whereas the tax actually assessed against said shares amounted to the sum of $7,312.10, or an excess tax of $4,517.19. Appellant paid the first sum above mentioned as and for the amount justly due, as it contends and brought this action to restrain the collection of the remainder, which it insists is excessive.

The proposition is incontrovertible that, under the Constitution and laws above cited, taxation should be uniform upon all property within the jurisdiction of the authority levying the tax. In this connection appellant admits that absolute equality and uniformity in valuing property is neither necessary or "humanly possible." Appellant concedes that the valuation of property is a matter that rests largely within the discretion of county assessors and boards of equalization; that mere errors on their part, resulting in erroneous valuations, if made in good faith, do not invalidate the taxes based on such valuations. But it contends that when such erroneous valuations are determined by the adoption of wrong principles, standards, or methods, they necessarily produce inequality and nonuniformity; and when they result in discrimination against a certain class of property, as compared with other classes in the same jurisdiction, the taxes assessed upon such valuation, to the extent of the excess resulting from the discrimination, becomes illegal and the tax-

payer so discriminated against is entitled to injunctive relief.

The question as to whether appellant is entitled to the relief sought in this action is reserved for consideration later on. It should be conceded, nevertheless, that **2** the intentional and willful adoption of wrong principles, standards, or methods in assessing property for taxes, resulting in inequality, nonuniformity, and discrimination to the injury of the taxpayer, entitles him to injunctive relief unless he otherwise has a plain, speedy, and adequate remedy. None of the authorities cited by either of the parties to this litigation controvert the above proposition. In our opinion it is fundamental, and must be true if the provisions of the Constitution and laws relating to taxation have any force or effect. Many of the adjudicated cases cited by appellant support this proposition in a greater or less degree, and very few can be found to the contrary, where the conditions are as above stated. *Green* v. *Louisville & Interurban Co.,* 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; *Cummings* v. *National Bank,* 101 U. S. 153, 25 L. Ed. 903; *Stanley* v. *Supervisors of Albany,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; *Taylor* v. *Louisville N. R. Co.,* 88 Fed. 350, 31 C. C. A. 537; *Lively* v. *Missouri, K. & T. Co.,* 102 Tex. 545, 120 S. W. 852; *Andrews* v. *King County,* 1 Wash. 46, 23 Pac. 409, 22 Am. St. Rep. 136; *First Thought Gold Mines Co.* v. *Stevens County,* 91 Wash. 437, 157 Pac. 1080; *Louisville & N. R. Co.* v. *Bosworth* (D. C.) 230 Fed. 191; *Drew County Timber Co.* v. *Board of Equalization,* 124 Ark. 569, 187 S. W. 942; *Nevada-California Power Co.* v. *Hamilton* (D. C.) 235 Fed. 317; *Johnson* v. *Holland,* 17 Tex. Civ. App. 210, 43 S. W. 71; *Oregon & C. R. Co.* v. *Jackson County,* 38 Or. 589, 64 Pac. 307, 65 Pac. 369; *Board of Commissioners of Lyons County* v. *Sergeant,* 24 Kan. 407; *Sioux Falls Savings Bank* v. *Minnehaha County,* 29 S. D. 146, 135 N. W. 689, Ann. Cas. 1914D, 910; *Railroad & Telephone Cos.* v. *Board of Equalization* (C. C.) 85 Fed. 302; *Trustees of Cincinnati Sou. Ry.* v. *Guenther* (C. C.) 19 Fed. 395; *Dundee County* v. *Parrish* (C. C.) 24 Fed. 197; *People* v. *Coleman,* 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762; *People* v.

*Barker,* 139 N. Y. 55, 34 N. E. 723; *Atchison, T. & S. F. Ry. Co.* v. *Sullivan,* 173 Fed. 456, 97 C. C. A. 1.

To undertake to distinguish these cases would extend our remarks to an undue length, and, in our judgment, the necessities of the case do not require it.

In support of its contention that property in Salt Lake county in 1915 was intentionally assessed disproportionately and in such a manner as to discriminate against the shares of appellant bank and other banks, appellant offered in evidence a report prepared by the ''Commissioners of Revenue and Taxation,'' a board appointed in pursuance of an act of the Legislature of 1911 (Sess. Laws 1911, c. 84).

The act, in substance, provided that the board should compile all the laws of the state in force relating to taxation; that it should thoroughly consider the taxation laws of other states of the Union; that it should report to the next succeeding session of the Legislature, with recommendations as to necessary changes in existing laws, together with a bill covering the whole subject of revenue and taxation. Other powers and duties were conferred by the act upon the board, but they are not pertinent to the issues here presented. The report offered in evidence purported to contain a summary of information collected by the board as to the values at which property had been assessed in the various counties of the state in previous years. The report was presented, as required by the act, to the legislative session of 1913. Respondent objected to the report as evidence on the ground that it was incompetent, irrelevant, and immaterial. The objection was sustained. Inasmuch as the act itself did not provide that the report should be accepted as evidence, nor does any other statute of the state or rule of evidence with which we are familiar make it admissible, we are unable to conceive upon what ground the evidence could be considered competent. The commissioners themselves were not called as witnesses to verify the report. The purported information contained in the report related to the valuations of property in previous years, with nothing to connect them or make

them material to the issues here presented. It was unquestionably objectionable as hearsay evidence, and therefore incompetent. Appellant assigns as error the ruling of the court sustaining the objection. The court did not err in excluding the evidence.

Other evidence was offered and admitted by the parties bearing upon the question of disproportionate and discriminating valuation, but it suits our convenience to first dispose of two or more special features involving methods of computation used in determining the value at which the property should be assessed.

Appellant contends that in making the deduction of the assessed valuation of real estate the assessor did not comply with the requirements of the statute. Section 2509, Comp. Laws, supra, relates entirely to the amount to be deducted on account of real estate and the method of determining the amount. The assessor, in assessing appellant bank's shares, first determined to his own satisfaction the value of the shares. This included the value of the real estate. He found the value of the shares to be $450,000. As the real estate was separately assessed, it became necessary to deduct a certain sum on account of the real estate from the total value of the shares in order to determine the value to be assessed against them. The assessor deducted only $98,395, which was the value at which the real estate was separately assessed. Appellant insists that a greater sum should have been deducted. In our opinion appellant is right in this contention. The statute (section 2509) appears on first blush to be somewhat bungling and difficult of interpretation, but a careful, painstaking consideration of the language employed determines the meaning to be as appellant contends. The language of the section is: "There must also be deducted from the value of such shares such sum as is in the same proportion to such value as the assessed value of the real estate of such bank or banking association bears to the whole amount of the capital stock, surplus, reserve, and undivided profits of such bank or banking association." The amount of capital stock and surplus of appellant bank, as shown by its returns, was

$300,000. The value of the shares as determined by the assessor was $450,000. Therefore there should have been deducted from $450,000 such a sum as is in the same proportion to said value as $98,395 is to $300,000; in other words, as $98,395 is to $300,000 so is "X" to $450,000. The result, $147,592, is the amount to be deducted on account of the real estate, instead of $98,395 deducted by the assessor. Another way of reaching the same result: If the capital stock, surplus, etc., $300,000, is increased in value by fifty per cent., bringing the amount up to $450,000, then in determining the amount to be deducted for the real estate the assessed value of the real estate, or $98,395, should also be increased by fifty per cent., reaching the same result—$147,592.

But this is not the only alleged error relied on by appellant in respect to the method of deduction. Appellant contends that the order adopted in making the deductions was wrong. The assessor first, deducted from the $450,000 the assessed value of the real estate, or $98,395, leaving a balance of $351,605. He then deducted from this amount 40 per cent., or $140,642, leaving a balance of $210,963. This amount is assumed to be the value at which shares in appellant bank were assessed. Assuming the value of the shares to be $450,000, appellant's contention, if we understand it, is that the order of deduction should be as follows: First, deduct from the $450,000 40 per cent., leaving a balance of $270,000; then deduct the sum heretofore found as the value of the real estate, $147,592, leaving a balance of $122,408 as the value at which the shares should be assessed. While we acceded to the view of appellant as to the sum to be deducted on account of the real estate, we cannot, if it still insists that that amount should be deducted, accede to its contention that the order of deduction was wrong. Assuming that the $450,000 is the value of the shares, then it would seem to follow as a logical sequence that $147,592 is the value of the real estate. If $147,592 is the value of the real estate, and that sum is deducted from the value of the shares, how can it be successfully contended, in view of the statutes referred to, that the result thus obtained is not the proper sum

from which to make the further deductions allowed to other classes of property? To first deduct the forty per cent. from the value of the shares, and then deduct from the remainder the value of the real estate, leads to a palpable incongruity, resulting in a portion of the property escaping taxation altogether. The figures we have used are not the figures, in all respects, used by appellant; but inasmuch as appellant insists that by an improper deduction on account of the real estate appellant was overassessed $49,200, and then by following an improper order in making the deductions it was overassessed $39,458, the two amounts combined, if appellant is correct in both instances, amount to a tremendous discrepancy when compared with the proper valuation of the property. For this reason we have worked the problem presented by our own method of computation in an effort to arrive at a correct conclusion.

Adopting appellant's view as to the amount to be deducted on account of the real estate, and our own view as to the order in which deductions should be made, the problem worked out and the result reached are as follows: $450,000, the value of the shares, less $147,592, the value of the real estate, equals $302,408, which is the value of the shares less the value of the real estate. Forty per cent. of this amount deducted from it leaves a result of $181,444, the value at which the shares should be assessed. In making these computations we have assumed the value of the shares to be $450,000, and the per cent. of deduction to be forty per cent., because both parties, for the purposes of discussion, have used these figures. It must be borne in mind, however, that appellant insists that the valuation of the shares at $450,000 is too high, while respondent insists that the deduction assumed by appellant to be the percentage adopted is not high enough. These questions will be considered before we conclude these remarks.

One further suggestion as to the amount to be deducted on account of real estate and the order of deduction. It is manifest on a casual inspection that whatever may be the order of deduction the sum of $98,395 is not the proper amount. If deducted first as shown by appellant and conceded by us, the

result is too large; if deducted after, it is too small. This is because the real estate and the shares were assessed on different percentages of the valuation assumed for purposes of assessment. What we mean by assumed valuation is that the assessor either found or assumed the valuation of the shares was $450,000, and upon applying the rule laid down in section 2509, as shown above, the result is $147,592, which must be the value of the real estate for purposes of assessment. As this value is one and a half times $98,392, the value at which the real estate was assessed, it follows that the real estate was assessed upon a basis of 66⅔ per cent., while the shares were assessed upon a lower percentage.

Assuming that our method of computation is correct upon the figures given, as before stated the correct amount at which the shares should have been assessed is $181,444. It follows, therefore, that the board of equalization favored the appellant when it reduced the assessment to $175,814. These considerations, however, are not of vital importance until it is finally determined what the per cent. of deduction was, or should have been, in making the assessment.

Another contention of appellant, and one that is vigorously urged, is that the asset value of the shares, and not the market value, should have been taken as the basis for assessment. Appellant defines the asset value of a share of stock as being the sum obtained by dividing the total number of shares into the sum of the capital, surplus, reserve, and undivided profits of the corporation. In this case the capital stock, as before stated, is $250,000, the surplus $50,000, total $300,000. There are 2,500 shares of stock, which divided into $300,000 gives a result of $120, the value of one share of the stock for taxation purposes. Notwithstanding shares may be selling in the market at a higher price, and may be readily converted into money at a much higher figure, still the contention is that the basis of valuation for taxation purposes is the asset value as above defined. In this case the assessor determined the value to be $180 per share, total $450,000, as hereinbefore stated.

In *Bank* v. *Christensen*, 39 Utah, 568, 118 Pac. 778, while

the identical question here presented was not raised, yet the court in its opinion all the way through assumed that the proper basis for taxation is the actual or market value of the shares. We see no reason why the same basis of valuation should not be used for this class of property as is or should be used for other classes of property within the jurisdiction levying the tax. The statutes quoted by appellant in its brief and by us in these remarks furnish appellant no grounds whatever for its contention. Section 2509, heretofore characterized as apparently bungling and difficult of interpretation, need never have been enacted in its present form if asset value alone is to be considered conclusive. Subd. 5 of section 2505, supra, defines cash value and full cash value for taxation purposes, and makes no distinction whatever between the value of bank shares and the value of other kinds of property. Appellant furnishes us with no authority whatever in support of its contention, except an exceedingly ingenious theory wonderfully well presented by its able counsel, and even he, in his reply to respondent's brief, conceded that the assessing officers may resort to other sources of information than that furnished by the bank's statement of its capital, surplus, reserve, and undivided profits. We possibly may misconstrue the meaning and extent of this apparent concession, but, independent of that, the reasons are all against appellant's position, and so are the authorities and adjudicated cases that have been called to our attention. Respondent cites the following cases, which seem to be in point: *San Francisco Nat. Bank* v. *Dodge,* 179 U. S. 70, 25 Sup. Ct. 384, 49 L. Ed. 669; *Ankeny* v. *Blakley,* 44 Or. 78, 74 Pac. 485; *First Nat. Bank of Estherville* v. *City Council of Estherville,* 136 Iowa, 203, 112 N. W. 829; *Jones* v. *Rushville Nat. Gas Co.,* 135 Ind. 595, 35 N. E. 390; *Mayor & Common Council of City of Newark* v. *Tunis et al.* (N. J.) 81 Atl. 722; *Wyandotte County Gas Co.* v. *Spaeth,* 83 Kan. 191, 109 Pac. 785; *Schley* v. *Montgomery Co. Com'rs.,* 106 Md. 407, 67 Atl. 250; *Mayor, etc., of City of Newark* v. *Tunis,* 81 N. J. Law, 45, 78 Atl. 1066.

Thus far we have considered only three of appellant's propositions relied on in support of its contention that the assess-

ing officers systematically and intentionally adopted wrong principles, standards, and methods: (1) In failing to comply with the statutes in making deduction of the assessed value of appellant's real estate; (2) in not making this deduction in its proper order; and (3) in not adopting the asset value of shares in appellant's bank as the basis of valuation. As already shown, on the first proposition appellant's contention is right as to the amount that should have been deducted; but whether or not the error of the assessing officers was intentionally, designedly, or purposely committed, or whether it was an unintentional misconception of the meaning of the statute, in itself not easily comprehended, is a different question altogether.

It is claimed by respondent that if there was an error in respect to the amount to be deducted on account of the real estate it was afterwards substantially corrected by the board of equalization. The effect of the board's action has already been considered.

As to the last two propositions above referred to, we believe we have shown that appellant's contentions are without merit and are unsupported by either reason or authority.

Having disposed of these questions in which it is claimed that wrong principles, methods, and standards were adopted, it is now necessary to determine whether or not the assessor in assessing property for taxation in 1915 designedly and intentionally valued shares in appellant's bank, and other banks, at a higher valuation than that at which property of other firms, individuals, and corporations was assessed, and whether or not the assessor or board of equalization as claimed by appellant, systematically and intentionally adopted wrong principles, standards, and methods in assessing property which resulted in discrimination against the shareholders of appellant's and other banking institutions.

The evidence in the case is voluminous and conflicting. A large portion of it consists of tabulated statements introduced as exhibits. It is impracticable to attempt to do more than draw general conclusions from the mass of evidence produced at the trial.

In determining the value of property to be assessed in 1915, Mr. Parsons, the assessor, stated, in effect, that he had experience in Salt Lake county both as deputy assessor and real estate broker in previous years, and that he had no common standard either as to value of percentages or deduction; that he used as a basis the assessment of 1914, and increased or lowered the value according to his judgment; that he assessed real property somewhat higher than it had been assessed in 1914; that he tried to make the valuations uniform; that he made a substantial increase in the valuation of certain bank stocks; that he used the statements furnished by the banks and other information; that in the case of appellant he used its bank statement, also the report of the Secretary of the Treasury, as to its business, also the market prices as quoted in brokers' published reports, and information obtained from the cashier of appellant's bank, and also a stockholder with whom he conversed; that when he got through he thought, under the statutory definition of value, the mass of property in the county, including bank stock, was assessed quite uniformly, about from sixty to seventy-five per cent. of its real value; that the market value of the real estate of the bank, including improvements, was about $315,000; that he kept in mind the statutory definition of cash value, and in some instances found the market value and the values as defined by the statute were nearly the same; that in other instances there was quite a difference; that bank stocks had a readier sale at a fixed price than did most other classes of property; that it was more liquid and more easily converted into money; that in 1915 property was not assessed at its market value, that not being the proper standard; that he used the statutory definition as to value; that in making deductions he tried to arrive at a uniform valuation between bank stock and other property.

Other witnesses testified in relation to valuations and percentages of deduction. Most of them had been assessors or deputy assessors in former years; a majority of them stated that there was no fixed standard either of valuation or percentages of deduction used by them in 1915, but that they

used their best judgment, taking the assessment of the previous year as a guide, and raising or lowering the value with the purpose of arriving at a uniform valuation and equalizing the assessment.

It would be impracticable to harmonize the different assessments made by the various assessors and deputies in any one year, much less as between different years. It is equally impossible to deduce from the evidence a fixed standard or system, as far as valuations or percentages of deduction are concerned, except that Mr. Parsons, as above stated, says that in 1915 he tried to follow the statutory definition of cash value, and in making deductions it was for the purpose of equalizing the assessment and making it uniform.

It will be seen upon an examination of the evidence in detail that the percentages upon which property was assessed ranged all the way from 33⅓ to seventy-five per cent. of the estimated value, but sometimes the estimated value was what it would bring if sold under the hammer, sometimes what it would sell for in a fair market and at other times in accordance with the statutory definition of value. Mr. Parsons especially, according to his evidence, endeavored to assess property at its value as defined by the statute; that is, the price at which a creditor would accept if in payment of a just debt from a solvent debtor. In so doing he considered to some extent the fact that bank stock of an established going concern, paying substantial dividends, was more liquid than other property, more easily converted into money, and therefore would be more acceptable to a creditor in payment of a just debt from a solvent debtor. This, to some extent, gave it a greater value for taxation purposes than other classes of property had, especially where the creditor wanted money and was not in the market as a purchaser of other property.

Mr. Leatham, a witness for the plaintiff, to some extent, indorsed the same view. Nevertheless he insisted that the true basis should be the return statements of the banks as to their capital stock, surplus, reserve, and undivided profits. Mr. Parsons held to the view that these elements, while proper

to be considered, nevertheless should be considered in connection with market value, dividend earning capacity, and history of the stock in general, including the bank's stability as a going concern.

The court found that on January 1, 1915, appellant's bank had outstanding in the hands of its stockholders 2,500 shares of stock of the par value of $100 per share, or $250,000, and surplus in the sum of $50,000; that its real estate was of the value, approximately, of $312,167, which it carried on its books at $225,000, and was assessed for taxation purposes at $98,395; that in 1915 the assessor assessed the shares of stock in appellant's bank at $84.38 per share, or a total of $210,950; that the assessor did not confine himself to appellant's statement of capital stock and surplus which aggregated the sum of $300,000, but took into consideration appellant's assets, its financial statement, the value of its shares upon the market, the determined earning power of the stock, and other elements of value, tangible and intangible, of appellant's return of its capital stock and surplus, and thereby arrived at a valuation of $180 per share, or a total value of $450,000; that from this valuation he deducted the assessed value of the real estate, $98,395, thus arriving at the sum of $210,950 as the valuation of said shares for taxation purposes; that thereafter, on behalf of itself and stockholders, appellant applied to the board of equalization of said county for a reduction of the valuation fixed by the assessor, and upon a hearing before said board said valuation fixed by the assessor, $210,950, was by the board reduced to $175,814, or a value of $70.32 per share, upon which appellant was required to pay a tax of $7,312.10. Of this sum plaintiff paid $2,794.91, and obtained an order restraining the collection of the balance, $4,517.19.

The court further found that property in 1915 was not assessed at its full market value, but that during that and previous years it had been variously assessed at from one-third to three-fourths of its value; that real estate had generally been assessed at a smaller percentage than had personal property and improvements; that the assessor did not adopt any fixed standard of value with respect to either real or personal property.

The court further found that the taxing officers in fixing the value of said shares of stock were not guilty of fraud or misconduct, nor of any wrongful or illegal discrimination against appellant's bank, or other banking institutions in Salt Lake county; that the assessing officers did not adopt any method of making assessments which operated in such a way as to result in discrimination against the appellant bank or other banks; that in the year 1915 the valuations of eleven out of twenty-three banks within the county were increased, while on six other banks the valuations were reduced below previous assessments; that of the eleven banks the assessments, upon which had been increased by the assessor, five were reduced by the county board of equalization, and that said valuations were made on the banking stocks of the various banking institutions of the county for the purpose of equalizing the assessments between such banks and with the mass of other property in the county.

As conclusions of law the court found the defendant was entitled to proceed forthwith to collect the balance of the tax, and that the restraining order should be dissolved.

Judgment was entered accordingly.

The testimony in the case, as before stated, is conflicting. The burden was upon the appellant to establish by a preponderance of the evidence the wrongs and grievances of which it complains.

We find no substantial evidence whatever of intention or design on the part of the assessor or board of equalization to discriminate against appellant and other banks, or their stockholders, by the adoption of wrong principles, standards, or methods, or in any other respect. Even if we could find that there was some apparent discrimination in point of fact by which appellant and other banks and their stockholders were required to pay something more than was required of taxpayers on some other classes of property, still, as we understand the authorities, appellant would have no standing in a court of equity to restrain the collection of the tax unless the discrimination resulted from wrong principles, methods, or standards, willfully and intentionally adopted.

Discriminations resulting from mistake, inadvertence, and miscalculations or error of judgment must be remedied in some other form of proceeding than the one adopted by appellant in the case at bar. It would be exceedingly difficult to ascertain the exact percentage at which the mass of other property was assessed in Salt Lake county in 1915. An average of the various percentages adopted would probably result in a percentage somewhere between fifty and sixty; but this would be based upon different standards of value, as heretofore stated, and would, for that reason, be far from satisfactory. The conduct of the board of equalization in increasing the assessments as to some of the banks and reducing it as to others, and, finally, after a full and fair hearing, making a substantial reduction as to appellant's bank, on the face of it, at least, tends to establish the contention of respondent that the board, and the assessor as well, attempted in good faith to make the assessment as uniform as practicable upon all classes of property.

It is contended by respondent in this connection that the action of the board, under the circumstances of the case, was final, and not reviewable in this proceeding. 10, 11 In support of this contention he cites the following as authority: Comp. Laws Utah 1907, section 2683, to the effect that no injunction shall be granted by any court or judge to restrain the collection of taxes except where the tax is illegal or is not authorized by law. Respondent also refers to the following: Cooley, Taxation, 1459; *U. S. Radiator Corporation* v. *Wayne County,* 192 Mich. 449, 158 N. W. 1031; *Phillips* v. *Bancroft,* 75 Vt. 357, 56 Atl. 9; Broom's Leg. Max. 945; *Burton Stock Car Co.* v. *Traeger,* 187 Ill. 9, 58 N. E. 418; *Pioneer Iron Co.* v. *City of Negaunee,* 116 Mich. 430, 74 N. W. 700; High, Injunctions (4th Ed.) section 490; *Tallon* v. *Vindicator Consol. Co.,* 59 Colo. 316, 149 Pac. 108; *Western Union Tel. Co.* v. *Wright,* 158 Fed. 1004; *Mercur Gold Mining & M. Co.* v. *Spry,* 16 Utah, 222, 52 Pac. 382; *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164, 121 Pac. 384; *Arizona Copper Co.* v. *State,* 15 Ariz. 9, 137 Pac. 417; *Bank* v. *Christensen,* 39 Utah, 568, 118 Pac. 778; *Home*

*Fire Insurance Co.* v. *Lynch,* 19 Utah, 189, 56 Pac. 681.   The contention seems to be well founded, but we need not rest our decision solely upon this ground.   In *Mercur Gold Mining & M. Co.* v. *Spry,* supra, where a similar statute was relied on, this court said:

"While the statute referred to recognizes the right to injunction when the tax, or any part thereof, sought to be enjoined, is illegal, or is not authorized by law, the remedy should not be invoked, except in clear cases, based upon unquestioned facts, coming within the clear terms, letter, and spirit of the statute."

The language just quoted is approved and reaffirmed.   We are unable to find that the facts relied on by appellant in the present case come within the clear terms, letter, and spirit of the statute.

In concluding we suggest we have been greatly aided by the able briefs filed by the attorneys on both sides of the case, and also that it is a matter of gratification to know that the illogical, incongruous, and unauthorized method of assessing property for taxation purposes in this state prior to 1916 has been abandoned, and the more legal and rational method of assessing property at its actual value adopted.

For the reasons hereinbefore stated the judgment of the trial court is affirmed.   Respondent to recover costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.