452 P.2d 876

Floyd HARMER, Stanley D. Roberts, G. Marion Hinckley, as the Board of County Commissioners for Utah County, and as the County Board of Equalization, and as individual taxpayers in Utah County; Harrison Conover, as Utah County Assessor; Elwood L. Sundberg, as Utah County Auditor; Maurice C. Bird, as Utah County Treasurer; C. Steven Hatch, as a resident of and taxpayer in Utah County, Plaintiffs and Appellants,

v.

STATE TAX COMMISSION, Defendant and Respondent.

No. 11369.

Supreme Court of Utah.

April 2, 1969.

3. Gamble v. State (Fla.App.), 210 So.2d 238.

M. Dayle Jeffs, Boyd L. Park, and J. Robert Bullock, of Aldrich, Bullock & Nelson, Provo, for plaintiffs and appellants.

Phil L. Hansen, Atty. Gen., M. Reed Hunter, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

TUCKETT, Justice:

The plaintiffs bring this action as elected officers of Utah County, and also· as tax-

payers·of said County. The complaint of the plaintiffs and the counterclaim of the defendant both seek declaratory relief. In the court below, and here on appeal, the parties are seeking interpretations of the courts relative to the laws pertaining to the assessment of property for tax purposes, and the functions of county officials, as well as the State Tax Commission, in the assessment of property.

In 1961, the State Tax Commission commenced a program of re-evaluation of land values within the State. In pursuance of that program in 1965 and 1966, the re-examination of land values within the cities of Orem and Provo except for a small portion, were undertaken and completed. In these areas approximately 16,000 parcels of land were examined and re-evaluated. As a result of the defendant's re-evaluation, the average assessed valuation of lands within Provo City was increased more than 100% and the land values within Orem City were increased more than 150%. The re-examination of land values in the remaining portions of Utah County was not undertaken by the Tax Commission.

Pursuant to the taxing procedures and laws, the affected taxpayers were notified of the increased valuation placed upon their property. Because of the dramatic increase in assessments in the Provo and Orem areas, the Utah County Board of Equalization received a great number of requests from taxpayers affected thereby to readjust the valuation placed upon their properties. The Board commenced hearings on May 31, 1967, but due to the large number of requests for equalization, the Board was unable to complete its work on or before the June 20th deadline but it did continue to conduct hearings upon requests· filed prior to the deadline until it completed its work on or about July 10, 1967. The County Board of Equalization did not request permission of the Tax Commission to reconvene or to conduct hearings after the statutory deadline. It is the contention of the State Tax Commission that the County Board of Equalization exceeded the authority granted to it by Sec. 59–7–1, Utah Code Annotated 1953.[1] The County Board of Equalization heard approximately 1200 complaints and requests from taxpayers. Of the 1200 requests the Board of Equalization reduced the valuations fixed in approximately 700 cases.

After the actions were taken by the County Board of Equalization, the Tax Commission undertook to conduct its own

---

1. That section provides in part as follows: "All complaints regarding the assessment of property where notice of the decision of the county board of equalization thereon has not been given to the taxpayer on or prior to June 20, and all such complaints not disposed of or decided by said board on or prior to said date shall be deemed to have been denied on said date and no notice of such denial need be given." See also Sec. 59–5–46(10), U.C.A.1953 for extension of time by Tax Commission.

hearings and notified the owners of the 700 parcels of land whose values had been reduced by the Board of Equalization, of the hearings. After the hearings the State Tax Commission placed new valuations on the parcels of property which were substantially higher than those arrived at by the County Board of Equalization. Inasmuch as the new assessments came too late to be computed by the County Auditor and to permit the preparation and mailing of new tax notices, it became impracticable to collect taxes on the new valuation for the year, 1967.

The record indicates that the County Board of Equalization, during the time it was considering requests by the taxpayers who were affected by the action of the State Tax Commission, decided that agricultural land would be assessed according to its class. This decision of the Board is challenged as being in violation of the Constitution.[2]

We are here asked to determine whether the action of the State Tax Commission in conducting its re-evaluation program by selecting areas or districts in which to carry out that program complies with the Constitution of the state of Utah and the

statutes promulgated by the legislature. We are also asked to delineate the powers of the County Assessor, the County Board of Equalization, and the general powers of the State Tax Commission to supervise the local officers and boards under its general supervisory powers. The parties also ask the court to determine whether the County Board of Equalization was authorized under the law to conduct hearings after the June 20th deadline of complaints which had been filed prior to that date. We are likewise requested to determine whether or not the County Board of Equalization was authorized to determine value by classification.

We address ourselves first to the challenge of the plaintiffs respecting the validity of the program of the Tax Commission in re-evaluating the lands in the Provo and Orem areas. The problem simply stated is this: Does the Tax Commission have the power under the Constitution and the statutes of this State to re-evaluate the land or lands and improvements in certain areas or districts at random and without a plan or program which would tend to place all property valuations for taxation purposes on a more or less uniform basis?

2. Article XIII, Sec. 2, provides: "All tangible property in the state, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." Continental Bank of S.L.C. v. Naylor, 54 Utah 49, 179 P. 67.

Note: An amendment adopted by the people at the 1968 general election may permit a classification respecting agricultural lands. But that amendment is not before the court.

**328**

■ Article XIII, Section 3, Utah State Constitution, provides:

> The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the State, according to its value in money, and shall prescribe by law such regulations as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property, * * *.

It would appear that the term "its value in money" as used in the foregoing provision is synonymous with the term "reasonable fair cash value," "cash value," and "market value," as are generally used in referring to property values.

While absolute equality and uniformity in the assessment of property is not practicable, a requirement of reasonable uniformity and equality is essential. The record indicates, and the court below found, that the assessment levels of land in the state of Utah, or within Utah County, are not reasonably uniform nor equal.

■■ From time to time the legislature has spoken upon the problem of equalizing taxation and the assessment of property in connection therewith. The provisions of Section 59–5–46(9), Utah Code Annotated 1953, conferred upon the State Tax Commission the general power to equalize assessments throughout the State. The provisions of that Section are as follows:

> To have and exercise general supervision over the administration of the tax laws of the state, over assessors and over county boards in the performance of their duties as county boards of equalization and over other county officers in the performance of their duties in connection with assessment of property and collection of taxes, to the end that all assessments of property be made just and equal, at true value, and that the tax burden may be distributed without favor or discrimination.

In a further attempt to equalize assessments on a statewide basis the legislature in 1953 adopted Section 59–5–46.1, which is as follows:

> The state tax commission on a continuous county-by-county rotation basis and in co-operation with the various county assessors shall make a valuation of all taxable property in each county at least once every five years.

We are concerned with the proper interpretation of this statute in deciding whether or not the actions of the State Tax Commission which led up to the dispute we have under consideration conform to the intent of the legislature. We are inclined to the view that the legislature intended that the program of evaluation be undertaken by completing one county at a time, rather than by re-evaluating areas within a county.

While it is important that all property throughout the State be assessed on a basis of equality, it is even more important that the property within each county be equalized for tax purposes. State-wide evaluation and equalization affect only the levy of taxes for State purposes, principally to support the Uniform School Fund, while equalization within each county affects the levy for county purposes as well as levies to support local school districts, the cities, towns and various other service districts. To reassess and to re-evaluate comparatively small areas within a county casts upon the taxpayers within those areas a disproportionate share of the costs of government. While it is realized that a program of re-evaluation will of necessity require considerable time and money in its completion, nevertheless it is essential that a plan as envisaged by the legislature should be formulated and set in operation. The record in this case would indicate that the Tax Commission did not in fact have a continuous or workable plan which could be completed within five years or within the foreseeable future. In any event, it would seem that the present practice of the Tax Commission in re-evaluating areas within the State does not comply with the statute above mentioned. The Tax Commission suggests that the court by edict order evaluation and equalization of all the property in the State as has been done in some of the other states of the Union.[3] Needless to say, the court is without power to order such an undertaking due to the fact that the proper parties are not before the court, and the statute under which these proceedings are laid does not permit the relief suggested.

■■ As to the other matters presented to the court for decision we hold as follows: The Tax Commission has the power to make an assessment or reassessment upon its own initiative of any property it deems to have been overassessed or underassessed, or which it finds has not been assessed.[4] When hearings are conducted after notice for that purpose pursuant to Section 59–5–47, U.C.A.1953, neither the County Assessor nor the County Board of Equalization may change an assessment made by the Commission.

3. Russman v. Luckett (Ky.), 391 S.W.2d 694.

4. "The state tax commission shall adjust and equalize the valuation of the taxable property in the several counties of the state for the purpose of taxation; and to that end it may of its own initiative order or make an assessment or reassessment of any property which it deems to have been overassessed or underassessed or which it finds has not been assessed. In the event the commission shall intend to make an assessment or reassessment under this section, notice thereof and of the time and place fixed by it for the determination of such assessment shall be given by the commission, by letter * * * to the owner of such property and to the auditor of the county in which such property is situated."

■ As to the question as to whether or not the County Board of Equalization has the power to hold hearings, after the June 20th deadline, we are of the opinion and hold that the Board has no such power. It would seem that the language of the statute in question is clear, and that the legislature did not intend that the Board of Equalization should extend its hearings beyond the deadline so as to avoid interference with the other time schedules set forth in the statutes pertaining to the duties of other county and state officers in taxing procedures.

■ We are of the opinion that the County Board of Equalization was not authorized to determine value by classification of property and that an assessment based thereon was in violation of the Constitution.

The decision of the court below is affirmed except as herein indicated and no costs are awarded.

CALLISTER, HENRIOD and ELLETT, JJ., concur.

CROCKETT, Chief Justice (concurring -dissenting in part).

The need and the desirability of uniformity and equality in the asssessment and taxation of property to the highest degree that can be atttained is acknowledged by all fair-minded persons. That this is the purpose is evident in both the constitution and the statutes. The means of carrying out that purpose in practical operation is quite another matter. The main opinion recognizes this in setting forth the requirement of "reasonable uniformity," which, as the opinion states, has been determined does not exist "in the state of Utah, or within Utah County." A grave difficulty exists in the fact that there are hundreds of thousands of pieces of property in the state, e. g., over 50,000 in Utah County itself. It is obvious that this lack of uniformity and equality in the taxation cannot all be corrected at once. It seems to me that it should be recognized that this is also true within the counties. Even though Section 59-5-46.1, U.C.A.1953, provides that the tax commission shall carry on a continuous valuation of properties on a "county-by-county rotation basis," this should not necessarily be taken to mean that it can only be done by whole counties at a time. It is possible that in a county there may be a particular section or sections where the taxation is greatly unequal in relation to the rest of that county as well as to the rest of the state. The start toward making necessary corrections must be made somewhere; and wherever the start is made it is not unnatural that those adversely affected complain. But from what is made to appear, I am not persuaded that the Tax Commission has been arbitrary, unreasonable or discriminatory in proceeding to-

ward the desired objective. It should not be impeded but should be encouraged to proceed in fulfilling its responsibiltiy as expeditiously as possible. Except as noted above I am in agreement with the main opinion.