KENNECOTT COPPER CORPORA-
TION, a New York corporation,
Plaintiff and Appellee,

v.

SALT LAKE COUNTY, a body corporate
and politic; Arthur Monson, Treasurer
of Salt Lake County; Milton Yorgason,
Assessor of Salt Lake County, Defen-
dants and Appellants,

v.

UTAH STATE TAX COMMISSION,
Cross–Claim Defendant
and Appellee.

No. 870047.

Supreme Court of Utah.

Oct. 12, 1990.

David E. Yocom, Bill Thomas Peters, John G. Avery, Salt Lake City, for defendants and appellants.

James B. Lee, Kent W. Winterholler, Salt Lake City, for Kennecott Copper Corp.

R. Paul Van Dam, Maxwell A. Miller, Leon A. Dever, Salt Lake City, for Utah State Tax Com'n.

STEWART, Justice:

Salt Lake County appeals a summary judgment dismissing its counterclaim against Kennecott Copper Corporation and the Utah State Tax Commission.

## I. FACTS

Kennecott brought this suit against the Tax Commission, Salt Lake County, and others for a partial refund of its 1981 property taxes, previously paid under protest. Kennecott's action was based on Utah Code Ann. § 59–11–11 (1974).[1] Kennecott alleged that because Utah Code Ann. § 59–5–4.5 (Supp.1981) (repealed 1982) reduced the valuation of county-assessed properties by 20 percent but did not reduce the valuation of Kennecott's mining properties, it led to a "non-uniform and unequal rate of taxation," in violation of article XIII, section 3 of the Utah Constitution. Salt Lake County filed a counterclaim against Kennecott and two cross-claims against the Commission. Subsequently, this Court held § 59–5–4.5 constitutional in another lawsuit. *Rio Algom Corp. v. San Juan County*, 681 P.2d 184 (Utah 1984), effectively disposed of Kennecott's complaint, but the County's counterclaim and cross-claims were left for resolution.

The County's counterclaim against Kennecott alleged that Kennecott's mining properties and equipment were undervalued and not assessed at the constitutionally mandated "full cash value" or "value in money" under article XIII, section 3. The County sought to recover taxes from Kennecott for underassessed or unassessed mining properties for the five-year period prior to 1982. The County's first cross-

---

**1.** The current provision which allows payment of taxes under protest and an action to recover such taxes is Utah Code Ann. § 59–2–1327 (Supp.1990).

claim against the Commission alleged that Utah Code Ann. § 59–5–57 (Supp.1981), which prescribed the formula for the assessment of mines, mining claims, and mining machinery, did not produce assessments based on the full cash value of Kennecott's properties and therefore violated article XIII, section 3 of the Utah Constitution. The County sought a declaration that § 59–5–57 was unconstitutional and an order directing the Commission to correct its assessment procedures. The County's second cross-claim is no longer relevant. Section 59–5–57 provided in pertinent part:[2]

> All metalliferous mines and mining claims, both placer and rock in place, shall be assessed at $10.00 per acre and in addition thereto at a value equal to two times the average net annual proceeds thereof for the three calendar years next preceding or for as many years next preceding as the mine has been operating, whichever is less; but there shall be no valuation based upon net annual proceeds for the purpose of assessment of any such mine or mining claim for any one year in which there were no gross proceeds realized in the year next preceding the year of assessment.

The trial court initially ruled that the County lacked standing to maintain its counterclaim against Kennecott and its cross-claim against the Commission. On a prior appeal, we reversed, holding that the County had standing to contest the constitutional validity of § 59–5–57. *Kennecott Corp. v. Salt Lake County*, 702 P.2d 451 (Utah 1985). Accordingly, we remanded the case to the trial court for further proceedings.

Kennecott and the Tax Commission then filed motions for judgment on the pleadings. The County responded by filing a motion for summary judgment with supporting affidavits. The trial court struck the affidavits and entered summary judgment against the County on its counterclaim and cross-claim on two grounds. First, the court ruled that the method of assessing mines under § 59–5–57 based on the formula of two times the average net annual proceeds was, on its face, constitutional. Second, the trial court ruled that Kennecott's property could not, in any event, be reassessed for prior years under the Utah escaped assessment statute, Utah Code Ann. § 59–5–17 (1974). On this appeal, Salt Lake County contests both rulings.

## II. STANDARD OF REVIEW

We apply the usual standard of review to an appeal from a summary judgment. The issues are issues of law, and we do not

---

2. This section has been amended several times since it appeared in the form given in the text. Section 59–2–201, which is presently in effect, provides a different formula for valuing mining property:

> (1) By May 1 the following property shall be assessed by the commission at 100% of fair market value, as valued on January 1, in accordance with this chapter:
>
> . . .;
>
> (e) all mines and mining claims except in cases, as determined by the commission, where the mining claims are used for other than mining purposes, in which case the value of mining claims used for other than mining purposes shall be assessed by the assessor of the county in which the mining claims are located; and
>
> (f) all machinery used in mining, all property or surface improvements upon or appurtenant to mines or mining claims.
>
> . . .
>
> (2) The method for determining the fair market value of productive mining property is the capitalized net revenue method or any other valuation method the commission believes, or the taxpayer demonstrates to the commission's satisfaction, to be reasonably determinative of the fair market value of the mining property. The rate of capitalization applicable to mines shall be determined by the commission, consistent with a fair rate of return expected by an investor in light of that industry's current market, financial, and economic conditions. In no event may the fair market value of the mining property be less than the fair market value of the land, improvements, and tangible personal property upon or appurtenant to the mining property.

Utah Code Ann. § 59–2–201 (Supp.1990).

defer to the trial court's conclusions. *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989).

## III. APPLICABILITY OF SECTIONS 2 AND 3 OF ARTICLE XIII TO SECTION 4 OF ARTICLE XIII

■ We turn first to the issue of whether § 59-5-57 is constitutional as a matter of law. In its counterclaim against Kennecott, the County alleges that much of Kennecott's property escaped taxation "due to the use of an unconstitutional methodology of assessment." The County asserts that § 59-5-57 "establishes a value that has no relationship to the full cash value" of Kennecott's mining properties and therefore violates article XIII, sections 2 and 3 of the Utah Constitution. The County also argues that the Commission's method of assessment under § 59-5-57 allowed Kennecott's properties to escape assessment altogether and that it is entitled to a reassessment. In its brief, Salt Lake County alleges that in 1981 Kennecott had $570,000,000 worth of minerals that the Commission valued at zero.

Kennecott and the Commission rejoin that § 59-5-57 cannot be unconstitutional because it was enacted pursuant to the authority granted the Legislature by article XIII, section 4 of the Utah Constitution and that section 4 is not subject to the limitations of sections 2 and 3 of article XIII.[3]

■ Clearly, however, not every statute that purports to have been enacted pursuant to legislative authority granted by article XIII, section 4 is *ipso facto* constitutional. When the people of this state grant authority by the Constitution to the Legislature to enact legislation, the Legislature may enact only those laws which are consistent with and effectuate the purpose of the authorization and are otherwise consistent with other applicable constitutional provisions.

Article XIII, section 2 of the Utah Constitution provides, "All tangible property in the state ... shall be taxed in proportion to its value, to be ascertained as provided by law." Article XIII, section 3 provides:

The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the state, according to its value in money, and shall prescribe by law such regulations as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property....

■ Sections 2 and 3 of article XIII of the Utah Constitution establish the basic state policy concerning the taxation of all tangible property. *Cunningham v. Thomas,* 16 Utah 86, 90, 50 P. 615, 616 (1897), stated that the underlying objective of sections 2 and 3 is to insure that all taxable property should "bear its just proportion of the burdens of taxation." To achieve that objective, the market or cash value of all property must be ascertained and used as the common denominator for all assessments. The Court explained in *Cunningham:*

It is evident that the term "according to its value in money" [article XIII, section 2] means that all property shall be valued, for the purposes of assessment, as near as is reasonably practicable, at its full cash value; in other words, that the valuation for assessment and taxation shall be, as near as reasonably practicable, equal to the cash price for which the

---

**3.** At the time this suit was commenced, article XIII, section 4 stated:

All metalliferous mines or mining claims, both placer and rock in place, shall be assessed as the Legislature shall provide; provided, the basis and multiple now used in determining the value of metalliferous mines for taxation purposes and the additional assessed value of $5.00 per acre thereof shall not be changed before

January 1, 1935, nor thereafter until otherwise provided by law.

Article XIII, sections 2, 3, and 4 were all amended in the general election on November 2, 1982. Those amendments became effective January 1, 1983. They are of no consequence to this appeal. 1982 Utah Laws S.J.R. 3 at 457–62. We refer throughout this opinion to sections 2, 3, and 4 as they existed prior to the 1982 amendment.

property valued would sell in the open market, for this is doubtless the correct test of the value of property.

16 Utah at 90, 50 P. at 615–16. Although different formulas may be employed in determining the cash or market value of different types of property, such as mines, utilities, railroads, personal residences, etc., each formula must be reasonably designed to achieve that result.

■ The fundamental principle that assessments reflect fair market value so that each property is assessed in proportion to the value of all property applies equally to mines, even though article XIII, section 4 specifically concerns the assessment of mines. *United States Smelting, Refining & Mining Co. v. Haynes*, 111 Utah 172, 181, 176 P.2d 622, 627 (1947), stated with respect to the applicability of sections 2 and 3 to the assessment of mines:

It will be observed that these provisions [i.e., article XIII, sections 2, 3, and 4] require that all tangible property, including metalliferous mines, shall be subjected to a uniform and equal rate of assessment according to its value in money. The method or yardstick by which the valuation in money is to be determined shall be prescribed by the legislature. It is not required that the same yardstick or method of determining value shall be used with respect to all kinds of property. But the different formulae which may be applied to different kinds of property must be such that they aim and tend to secure for assessment purposes a valuation fair and equitable in comparison with and commensurate with the valuation of other kinds of property. When the valuation thus secured is such that if the uniform and equal rate of taxation is applied to the valuation the property is taxed in the same proportion to its value as is all other tangible property, the method of arriving at the assessed valuation is not subject to constitutional objections as violative of Article XIII.

The Court held that a statute that provided for the taxation of metalliferous mines pursuant to section 4 of article XIII must also comply with the requirement of uniformity and the standard of valuation based on the common denominator of fair cash value, as specified by sections 2 and 3 of article XIII. 111 Utah at 181–84, 176 P.2d at 627–28.

■ Given the unavoidable imprecision that is inherent in all valuations, this Court has recognized that the assessment of property is built on the art of economic practicability. Thus, sections 2 and 3 of article XIII require that all property assessments represent approximations of market value. *Rio Algom Corp. v. San Juan County*, 681 P.2d 184 (Utah 1984); *State ex rel. Cunningham v. Thomas*, 16 Utah 86, 90, 50 P. 615, 616 (1897). Reasonable uniformity of assessment is essential if every person and corporation is to be taxed in the same proportion to "his, her, or its tangible property." *See Harmer v. State Tax Comm'n*, 22 Utah 2d 324, 328, 452 P.2d 876, 879 (1969).

■ In this context, *Rio Algom Corp.* declared that uniformity must be achieved in terms of what is "practicably attainable":

Thus, §§ 2 and 3 of Article XIII permit the Legislature to adopt means to achieve that degree of uniformity in valuation that is practicably attainable within the general confines of the term "market value." The objective is to assure that the taxes that are levied in a given county will result in each property's being "accountable for its pro rata share of the burden of local government."

681 P.2d at 192 (citing *Appeal of Johnstown Assoc.*, 494 Pa. 433, 438, 431 A.2d 932, 934 (1981)). The same principle applies to state-assessed properties. Inherent lack of precision in the assessment process does not justify abandonment of the requirement that uniformity be attained. "While absolute equality and uniformity in the assessment of property is not practicable, a requirement of reasonable uniformity and equality is essential." *Harmer v. State Tax Comm'n*, 22 Utah 2d 324, 328, 452 P.2d 876, 879 (1969). *See also Cunningham*, 16 Utah at 99, 50 P. at 618 ("[P]erfect equality in valuations and assessments is unattainable, owing to the

fallibility of the human judgment."). Where it is impossible to achieve perfectly both the standard of true value and the standard of uniformity and equality, the latter standard should prevail. *Rio Algom Corp.*, 681 P.2d at 194.

■ Even though section 4, article XIII specifically authorized the use of a net proceeds formula for the assessment of mines for a number of years, it does not follow that all net proceeds formulas are constitutional. The specific elements of such a formula have never been set out in section 4, although it has in the past expressly provided for the taxation of mines according to a general net annual proceeds formula. *See Tintic Standard Mining Co. v. Utah County*, 80 Utah 491, 495–96, 15 P.2d 633, 634–35 (1932) (history of article XIII, section 4).

As originally adopted in 1896, article XIII, section 4 stated that "the net annual proceeds of all mines and mining claims, shall be taxed as provided by law." Subsequent amendments to section 4 have modified that provision. For example, a 1908 amendment changed the phrase "shall be taxed as provided by law" to read "shall be taxed by the state board of equalization." Section 4 was again amended in 1918 to provide explicitly for the valuation of mines by a net annual proceeds formula: "All metalliferous mines or mining claims, both placer and rock in place shall be assessed at $5.00 per acre, and in addition thereto at a value based on some multiple or sub-multiple of the net annual proceeds thereof."

In 1930, section 4 was amended to virtually its present form [4] to allow the Legislature broader latitude in devising a formula for the assessment of mines. The 1930 amendment does not mandate a specific formula for mine valuation; it simply provides: "All metalliferous mines or mining claims, both placer and rock in place, shall be assessed as the Legislature shall provide...." The 1930 amendment also stated, however, that "the basis and multiple now used," i.e., a net proceeds formula, should not be changed until 1935.

Against this background, *United States Smelting* declared that "the statutory method of valuing metalliferous mines for taxation purposes at $5 per acre plus a multiple or sub-multiple of the net proceeds is a proper and constitutional formula for determining the value of the mines for assessment purposes." 111 Utah at 181, 176 P.2d at 627. Nevertheless, the constitutionality of the particular type of net proceeds formula at issue in *United States Smelting* was neither raised nor decided, nor has the Court ever squarely ruled on the constitutionality of a particular net proceeds formula.

If sections 2 and 3 of article XIII did not apply to the assessment of mines, as Kennecott now contends, the taxation of mines could be wholly arbitrary and discriminatory. For example, if the Legislature set the multiple annual net proceeds at a fraction of one, that would be the same as saying that all mines in the state have virtually no value, and they would escape paying their fair share of the tax burden. By the same reasoning, if the Legislature set the net annual proceeds multiple at fifty, Kennecott would no doubt assert that that was not a "uniform and equal rate of assessment and taxation." Furthermore, the absence of a uniformity requirement could result in gross disparity within the mining industry itself. Copper mines could be valued at ten times their net proceeds, while lead mines could be valued at two times their net proceeds.

Thus, a net proceeds formula can be a constitutional method of valuation, but whether a particular net proceeds formula yields a result that permits the conclusion that an assessment is uniform in result on a pro rata basis with other property assessments is the question that must be answered in this case.

Salt Lake County may be able to prove that the specific valuation formula in § 59-5-57 and/or the procedures and formulas the Tax Commission uses to implement that section do not produce a result that conforms to the requirements of article XIII, sections 2 and 3. Although the

---

**4.** *See supra* note 3.

Legislature and the Commission do have some discretion in fashioning and implementing a net proceeds formula, that discretion is limited and is no greater than practicability and sound judgment require.

In sum, we hold that the valuation formula enacted pursuant to article XIII, section 4, such as § 59-5-57 and the procedures and formulas used to implement it, must conform to the limitations in article XIII, sections 2 and 3 and that the County is entitled to adduce proof of the unconstitutionality of the statute at a trial on the merits.

## IV. RECOVERY OF LOST TAXES

■ The County's counterclaim against Kennecott seeks a judgment for back taxes based on an alleged undervaluation of Kennecott's mining properties. The trial court ruled on summary judgment that the County could not have Kennecott's property reassessed under the escaped assessment statute, Utah Code Ann. § 59-5-17 (1974), even if § 59-5-57 were unconstitutional.

In a different legal context, *Rio Algom Corp. v. San Juan County*, 681 P.2d 184 (Utah 1984), held that for the plaintiff mining companies in that case to recover for overpayment of taxes, they had to prove two elements: (1) the amount of undervaluation of county-assessed properties and (2) the true value of their own properties. 681 P.2d at 197. We recognized that a court could in those circumstances retroactively determine the true value of the plaintiffs' state-assessed properties and noted that state-assessed properties, in general, did not appear to be valued at full value. *Rio Algom Corp.* also held that any recovery the taxpayers obtained for an alleged overpayment of taxes could be reduced by the amount their own properties were shown to be undervalued. 681 P.2d at 197.

Here, Kennecott no longer claims that it has overpaid its taxes. The taxpayers who originally brought the action in *Rio Algom Corp.* did so pursuant to the statutory method for recovery of taxes paid under protest. *See* Utah Code Ann. § 59-2-1327 (Supp.1984). Because Kennecott does not now claim an overpayment, the County cannot now rely on the right to attack a past assessment on the theory that the taxpayer itself, in effect, opened the issue.

On remand of this case, the issue may therefore arise as to whether the County may recover back taxes from Kennecott if the net proceeds formula in § 59-5-57 as applied produced an unconstitutional assessment. The County relies on § 59-5-17, the escaped assessment statute, as authority for its right to recover underassessed taxes. At the time relevant to this action, § 59-5-17 provided:[5]

> Any property discovered by the assessor to have escaped assessment may be assessed at any time as far back as five years prior to the time of discovery, and the assessor shall enter such assessments on the tax rolls in the hands of the county treasurer or elsewhere....

Kennecott argues that this section does not apply to state-assessed properties because, in its view, the word "assessor" in the statute means only "county assessor." However, *Union Portland Cement Co. v. Morgan County*, 64 Utah 335, 341, 230 P. 1020, 1022 (1924), held that the state board of equalization could assess property omitted from assessment, even though an analogous statutory provision only referred to the "assessor." In keeping with *Union Portland Cement*, we hold that the term "assessor" includes both county assessors and the Tax Commission.

■ To justify a reassessment under § 59-5-17, the County must be able to show that unassessed or underassessed property "escaped assessment" and was not just "undervalued." *County Bd. of Equalization v. Utah State Tax Comm'n*, 789 P.2d 291 (Utah 1990); *County Bd. of Equalization v. Nupetco Assocs.*, 779 P.2d 1138, 1139 (Utah 1989); *Builder's Components Supply Co. v. Cockayne*, 22 Utah 2d

5. The statute now in effect that governs taxation of property which has escaped assessment is Utah Code Ann. § 59-2-309(1) (Supp.1990), which provides: "Any escaped property may be assessed by the original assessing authority at any time as far back as five years prior to the time of discovery...."

172, 450 P.2d 97 (1969). In this case, the County claims that the method of assessing Kennecott's mining properties constituted an "escaped assessment."

 When real property has been incorrectly assessed on a comparable sales basis, that ordinarily constitutes an undervaluation and not an escaped assessment under § 59–5–17. The County's counterclaim for taxes may, in effect, assert an undervaluation, or it may possibly assert an omitted or escaped assessment. The specific facts of this case, when proved, may be determinative of whether an incorrect assessment, if such be the case, results in an undervaluation or an escaped assessment. In determining that question, it may be significant that the method of state assessment is different from the methods employed by county assessors and that the degree of taxpayer participation in the state assessment procedure suggests a different analysis, particularly if the Tax Commission relies on the taxpayer's own records for the assessment data. Such differences might call for a different definition of "escaped assessment" under § 59–5–17 than we adopted in the cases cited above, which are based on fair market value.[6]

Clearly, we cannot resolve the issue here, because we have no factual foundation for doing so and we have had no briefing on the issue. In any event, the County is entitled to a declaratory judgment as to the constitutionality of the statute. Accordingly, the case is remanded to the trial court to allow the County to adduce its proof and for the issue to be resolved.

For the foregoing reasons, we reverse and remand for a trial on the merits.

**6.** *See also* Utah Code Ann. § 59–2–1007 (Supp. 1990), which authorizes counties to challenge property assessments made by the State Tax Commission:

> (1) If the owner of any property assessed by the commission, or any county with a showing of reasonable cause, objects to the assessment, either party may, on or before June 1, apply to the commission for a hearing. Both the owner or the county, upon a showing of reasonable cause, shall be allowed to be a party at any hearing under this section.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

. . . .

> (3) The commission shall set a time for hearing the objection and render a written decision no later than October 1. At the hearing the commission may increase, lower, or sustain the assessment if:
>
> (a) the commission finds an error in the assessment; or
>
> (b) it is necessary to equalize the assessment with other similarly assessed property.

This change in the law became effective in 1983. *See* Utah Code Ann. § 59–7–12 (Supp.1986); 1983 Utah Laws ch. 278, § 1.