2009 UT App 222

Warren OSBORN and Tricia Osborn; Michael F. Sullivan; David Mirsky and Cynthia Mirsky; Norman Provan; Jeffrey Trumper and Nancy Trumper; Gary Crittenden and Catherine Crittenden; David Checketts; and Mount Clyde Enterprises, LC, Petitioners,

and

Wasatch County, Cross-petitioner,

v.

TAX COMMISSION, Respondent.

No. 20080304–CA.

Court of Appeals of Utah.

Aug. 13, 2009.

See also, 2009 WL 2461887

Maxwell A. Miller, Randy M. Grimshaw, and Matthew D. Cook, Salt Lake City, for Petitioners.

Thomas L. Low, Heber City, for Cross-petitioner.

Mark L. Shurtleff, Atty. Gen., Laron J. Lind, and Timothy A. Bodily, Asst. Attys. Gen., Salt Lake City, for Respondent.

Before Judges THORNE, BENCH, and DAVIS.

OPINION

DAVIS, Judge:

¶ 1 Warren and Tricia Osborn; Michael F. Sullivan; David and Cynthia Mirsky; Norman Provan; Jeffrey and Nancy Trumper; Gary and Catherine Crittenden; David Checketts; and Mount Clyde Enterprises, LC (the property owners) appeal the order of the Utah State Tax Commission (the Commission), arguing that the Commission ignored the law when it determined the fair market value for portions of their properties. Wasatch County (the County) likewise appeals the decision of the Tax Commission, also arguing that the Commission's evalua-

tion method was incorrect, yet advocating a methodology different from that advanced by the property owners. We reverse.

## BACKGROUND

¶ 2 The properties involved in this dispute are lots at Wolf Creek Ranch in Wasatch County. The lots are each at least 160 acres, and the entirety of the lots originally qualified for tax assessment under the Utah Farmland Assessment Act, *see* Utah Code Ann. §§ 59–2–501 to –515 (2008). However, when the property owners chose to build primary residences on their properties, those individual one-acre home sites were no longer eligible for tax assessment based on agricultural use, *see id.* § 59–2–503(1), and were required to be assessed as is other property in the county, *see id.* § 59–2–507(2), i.e., according to the fair market value thereof, *see id.* § 59–2–103(1).

¶ 3 The dispute in this case arose because the property owners and the County had very different methods for calculating the fair market value of the acres removed from agricultural use.[1] The property owners argued that because zoning laws prevented them from selling their properties in any amount less than the total acreage, the only way to properly determine the fair market value of the home site acre on a lot was to divide the value of the entire lot by the number of acres in the lot. The County, on the other hand, argued that all acres of a lot were not equal because some acres had certain building rights that the other acres did not have, and that 65% of the value of each lot was attributable to the one-acre home site on the lot. The Commission took a third approach. Although it was convinced that more of the value of the lots was tied to the acres with building rights, the Commission determined that because each lot had a ten-acre envelope with building rights, the 65% figure would apply to the ten-acre "building envelope," which figure should then be divided by ten to obtain the fair market value of the home site, that is, just one of the ten acres with building rights. Both the proper-

ty owners and the County now petition for appellate review. *See generally id.* § 59–1–602(1)(a) (allowing aggrieved parties to petition either the district courts or the appellate courts for judicial review of a decision by the Commission).

## ISSUES AND STANDARDS OF REVIEW

¶ 4 Both parties argue that the Commission erred in its method of valuating the one-acre home sites.

> The proper application of appraisal techniques depends upon varying factual circumstances that defy generalization: "Valuation is an art, not a science. It is a function of judgment, not of natural law.... For example—true market value for purposes of ad valorem taxation is always an estimate, always an expression of judgment, always a result built on a foundation of suppositions about knowledgeable and willing buyers and sellers endowed with money and desire, whose desires are said to converge in a dollar description of the asset."

*Beaver County v. Utah State Tax Comm'n,* 916 P.2d 344, 355 (Utah 1996) (omission in original). Questions of appraisal methodology are therefore questions of fact that we review to determine whether substantial evidence supports the Commission's methodology. *See id.; see also* Utah Code Ann. § 59–1–610(1)(a) (2008). However, whether the Commission ignored statutory directives when applying a methodology is a question of law reviewed for correctness. *See* Utah Code Ann. § 59–1–610(1)(b).

## ANALYSIS

¶ 5 We first address the property owners' claim that the Commission committed legal error in its valuation of the home sites by ignoring the statutory requirement that a property's fair market value "shall be determined using the current zoning laws applicable to the property in question," *id.* § 59–2–102(12) (2008). The applicable zoning laws require that a lot have 160 acres in order to

---

1. This dispute is limited to the valuation of the one-acre home sites—that is, the land—and not the valuation of the houses that are built thereon.

have the right to build a residence thereon. From this requirement, the property owners conclude that because a home site cannot be sold separately from the remainder of the lot, any individual acre of the lot cannot have a value independent of the other acres. Thus, they argue that the proper valuation method is to divide the fair market value of a whole lot by the number of acres in the lot, equally spreading the property value among the acres.

¶ 6 We agree that the requirement to consider the applicable zoning laws cannot be ignored, but we are not convinced that the Commission ignored the zoning laws. Instead, it is clear from the Commission's findings that it understood and considered the zoning laws and knew the limitations on the sale of the lots. But under the Tax Code, the Commission was required to assign *some* value to the part of the property that was withdrawn from agricultural use. *See id.* § 59–2–507(2) ("All structures which are located on land in agricultural use, the farmhouse and the land on which the farmhouse is located, and land used in connection with the farmhouse, shall be valued, assessed, and taxed using the same standards, methods, and procedures that apply to other taxable structures and other land in the county."). The Utah Supreme Court has elaborated on this valuation procedure as follows:

> "[A]ll property shall be valued, for the purposes of assessment, as near as is reasonably practicable, at its full cash value; in other words, that the valuation for assessment and taxation shall be, *as near as reasonably practicable,* equal to the cash price for which the property valued would sell in the open market, for this is doubtless the correct test of the value of property."

*Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization,* 2005 UT 16, ¶ 29, 110 P.3d 691 (emphasis added) (quoting *Kenne-*

*cott Copper Corp. v. Salt Lake County,* 799 P.2d 1156, 1159–60 (Utah 1990)).

¶ 7 We do not agree that simply because the one-acre home sites being valued cannot be sold separately there is no way to allocate the fair market values for those acres. Indeed, even the solution proposed by the property owners allocates *some* fair market value to the home sites, notwithstanding that they cannot be sold separately.[2] And we do not agree that each acre in a lot has an equal value. As the Commission noted, the reality is that certain parts of the large lots—those parts with more rights and fewer restrictions—are more valuable than other parts: "[T]he building site is worth more than the undevelopable property subject to the conservation easement." Such an observation in no way ignores the zoning laws but, rather, considers the various rights and restrictions on the lots when determining the value of their parts, including the restrictions imposed by the easement that only ten acres of each lot had any building rights and that the remaining portions of the lots could not be developed. Thus, we determine that the Commission did not fail to follow the applicable statutory requirements when assessing the value of the one-acre home sites but was instructed by statute to determine a fair market value for only those acres of the properties withdrawn from agricultural use.

¶ 8 We next turn to the County's argument that the Commission's valuation of the home sites was not supported by substantial evidence. The County argues that its evidence valued the one-acre home sites as being 65% of the total lot value and that the Commission had no basis for altering that evidence to find that it was not the home sites, but the ten-acre building envelopes that contained 65% of the total lot value.

¶ 9 The Commission responds that "the County has not shown that the Commission's

2. We recognize that to some extent the statutory requirement to consider zoning laws when determining fair market value may be inconsistent with the Farmland Assessment Act's requirement to determine the value of only the land withdrawn from agricultural use. But the property owners simply cannot have it both ways. In arguing that the fair market value statute controls, the property owners rely on their expert's statement that a one-acre home site "cannot be separated from or treated differently from the rest of the 160–acres." Yet the property owners want each home site to be separated and treated differently from the remainder of its lot when they want only the one-acre sites withdrawn from agricultural use and the value spread over the remaining 159 acres taxed at the lower rate.

findings are without substantial evidence," pointing to very few pieces of evidence. We do not agree that such evidence supports the Commission's decision. First, we do not see how the County's appraiser's testimony supports the Commission's decision where the appraiser simply stated that had it been up to him, he probably would have valued ten acres as opposed to one. The appraiser then elaborated that considering that a large amount of the ten-acre building envelopes will likely be used for agricultural buildings, the one-acre valuation was fine with him. Moreover, regardless of the appraiser's preferences, it is clear from the appraiser's testimony that he did as he was assigned and valued only the one-acre home sites. There is no indication that the values he set forth were a valuation of the ten-acre building envelopes on the lots.[3]

¶ 10 Further, the Commission defies its own logic by arguing that there was insufficient evidence from which to differentiate the one-acre home sites from the remaining nine acres of buildable property in each building envelope. In rejecting the property owners' argument that a pro rata valuation should be applied, the Commission reasoned,

> [E]ach acre of the 160–acre parcel contributes to value. Prior to the designation of the building envelope that was on an equal basis. However, once the buildable envelope was designated, as had occurred for all properties subject to this appeal by the 2006 lien date, there are two distinct and identifiable classes of property, the 10 acre building envelope and the remaining undevelopable area covered by the conservation easement. These two areas do not contribute equally to the value.

The same reasoning applies to the building envelopes themselves. The Commission is certainly correct that there is nothing requiring a home site to be built upon any certain acre within a ten-acre building envelope. Hence, before a house is built on a lot, each of the ten acres in the building envelope initially has the same fair market value as each of the others because they all have the same building rights, including the right to build a house. However, once a house is placed on one acre within a building envelope, which had apparently occurred in this case, there are two new identifiable classes of property within the building envelope—one class that can have a house on it and one class with building rights limited to ancillary structures.[4] Thus, the evidence before the Commission was that one of the ten acres of each building envelope, and that acre's accompanying rights, was distinguishable from the remaining nine acres. Therefore, there was not substantial evidence before the Commission to find that the 65% figure was attributable to the entire ten-acre building envelopes as opposed to the single-acre home sites that were valued by the County's expert.

## CONCLUSION

¶ 11 The Commission did not commit legal error by ignoring the statutory requirement to consider the applicable zoning laws when determining the fair market value of property. We reverse the determination of the Commission, however, because the Commission's determination that 65% of the lot value belongs to the ten-acre building envelopes as opposed to the one-acre home sites is not supported by sufficient evidence. We therefore reverse the determination of the Commission with respect to this issue, and we remand for further proceedings consistent with this opinion.

¶ 12 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and RUSSELL W. BENCH, Judge.

---

3. Indeed, when applying the Commission's valuation to the ten-acre building envelopes and then factoring in the amount per acre of the remainder of the land, the sum does not equal the total value agreed upon as the fair market value of the lots.

4. This reasoning, however, would change if the property owners were not limited to building a single house in the building envelope. Were they able to build a house on each acre, the Commission would be correct that the ten acres within the envelope contained the same building rights—both before and after any structures were built within the envelope—and each of the ten acres would have the same fair market value.